1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7  CENTURION PROPERTIES, III, LLC;
   and SMI GROUP XIV, LLC.,                    NO:  CV- 12-5130- RMP

8
                            Plaintiffs,        ORDER GRANTING
9        v.                                    DEFENDANT'S MOTION FOR
                                               SUMMARY JUDGMENT
10 CHICAGO TITLE INSURANCE
   COMPANY, a Nebraska company,

11
                            Defendant.
12

13      **BEFORE** the Court is a motion for summary judgment filed by Defendant

14 Chicago Title, ECF No. 16.  The Court heard oral argument on the motion.

15 Plaintiffs Centurion Properties, III, LLC, and SMI Group XIV, LLC, were

16 represented by Todd S. Fairchild and Peter S. Ehrlichman.  Stephen J Sirianni

17 appeared on behalf of Chicago Title.  The Court has reviewed the briefing and the

18 record, and is fully informed.

19

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~1

1
BACKGROUND

2
This case is before the Court after entry of an order withdrawing the

3
reference to the bankruptcy court.  ECF No. 2.  The bankruptcy court resolved all

4
core proceedings, entered a final decree, and closed the bankruptcy case.

5
Remaining before the Court is a state tort law claim asserted by Plaintiffs against

6
Defendant Chicago Title.  Plaintiffs generally allege that Chicago Title negligently

7
recorded junior encumbrances against land owned by Centurion Properties III,

8
LLC ("CPIII"), thereby causing CPIII to default on its senior mortgage.  SMI

9
Group XIV, LLC ("SMI"), holds an ownership interest in CPIII.  ECF No. 1-4, at

10
106-53.

11
In 2006, Michael Henry, the sole member of SMI Group XIV, LLC, joined

12
with Tom Hazelrigg to form CPIII for the purposes of purchasing property and

13
commercial buildings leased to the Battelle Memorial Institute in Richland,

14
Washington.  CPIII attained a $70,866,000 loan from General Electric Capital

15
Corporation ("GECC") to purchase the property.  The loan was secured by a Deed

16
of Trust on the property naming GECC as the beneficiary.  The Deed of Trust and

17
two other instruments, the CPIII Operating Agreement and the GECC Loan

18
Agreement, prohibited the placement of any liens or encumbrances on the property

19
without GECC's approval.

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~2

1   Chicago Title served as escrow agent, closing agent, and title insurer for the

2   purchase of the Battelle Memorial property.  Chicago Title recorded the GECC

3   Deed of Trust and is named as trustee for the Deed of Trust.  Chicago Title also

4   received and reviewed copies of the CPIII Operating Agreement and the GECC

5   Loan Agreement as part of the transaction.

6        It is undisputed that six liens were placed on the property following its sale.

7   Plaintiffs allege that even though these liens were purportedly entered into by

8   CPIII, they were in fact not authorized liens.  Four of the disputed liens were

9   recorded by Chicago Title: (1) a Deed of Trust granted by CPIII in favor of

10  Centrum Financial Services, Inc., recorded on July 10, 2007; (2) a Deed of Trust

11  granted by CPIII to Centrum, recorded March 10, 2008; (3) a Deed of Trust

12  granted by CPIII to Trident Investments, Inc., recorded November 5, 2008; and (4)

13  a Memorandum of Agreement between CPIII and Trident, recorded November 6,

14  2008.  The other two disputed liens were not recorded by Chicago Title.  On April

15  7, 2008, First American Title Insurance Company, through Frontier Title, recorded

16  a Deed of Trust granted by CPIII to Equity Funding LLC.  An "Agreement

17  Regarding Trustee's Sale" between CPIII and Equity Funding was never recorded.

18       Chicago Title issued a lender's policy of title insurance to Centrum, insuring

19  that the Deed of Trust that was recorded on July 10, 2007, created a lien on the

20  property.  Chicago Title asserts that it recorded the other three liens as

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~3

"accommodation recordings." Chicago Title asserts that it did not perform any escrow or title services for those liens and received no "extra compensation" for the recordings.  However, Chicago Title was named as trustee in three of the four liens that it recorded and in the lien recorded by Frontier Title.

When GECC learned of the existence of the liens, it declared default and accelerated the entire unpaid principal balance of the load and imposed a default rate of interest.  CPIII ultimately paid more than $7.5 million in default interest to GECC, plus other fees and damages it allegedly incurred in removing the encumbrances.  Plaintiffs allege that they had an agreement with another entity, CTL Capital, to refinance the property, but that CPIII was required to remove the unauthorized encumbrances before CTL Capital would complete the loan.  GECC then attempted to foreclose under the disputed instrument that was recorded by First American Title on April 7, 2008.  Plaintiffs state that CPIII was forced to file for bankruptcy to try to remove the unauthorized encumbrances.

Plaintiffs assert that the recorded liens thus caused damages by prompting GECC to declare default and impose a default rate of interest, which in turn prevented Plaintiffs from securing timely replacement financing for the GECC loan.  Plaintiffs allege that Chicago Title should have known that all of the liens were improper pursuant to the GECC Deed of Trust, the CPIII Operating Agreement, and the GECC Loan Agreement, because Chicago Title had possession

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~4

of those documents in the course of its role as escrow agent, closing agent, and title

insurer in the 2006 sale of the Battelle Memorial property.

Chicago Title moved for summary judgment on Plaintiffs' claims.  For the

purposes of summary judgment only, Chicago Title concedes that it was careless in

recording the documents.

ANALYSIS

Summary judgment is appropriate when there are no genuine issues of

material fact and the moving party is entitled to judgment as a matter of law.

Federal Rule of Civil Procedure 56(a).  A "material" fact is one that is relevant to

an element of a claim or defense and whose existence might affect the outcome of

the suit.  *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630

(9th Cir. 1987).  The party asserting the existence of a material fact must show

"sufficient evidence supporting the claimed factual dispute . . . to require a jury or

judge to resolve the parties' differing versions of the truth at trial."  *Id.* (quoting

*First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).  The mere

existence of a scintilla of evidence is insufficient to establish a genuine issue of

material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).  If the moving party meets this challenge, the burden then shifts to the non-

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~5

moving party to "set out specific facts showing a genuine issue for trial." *Id.* at 324 (internal quotations omitted).  The nonmoving party "may not rely on denials in the pleadings, but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  In deciding a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 631-32.

Plaintiffs' complaint asserted a cause of action against Chicago Title for negligence under Washington law.  ECF No. 1-4, at 147-49.  Chicago Title moves for summary judgment on this claim.  In responding to Chicago Title's motion for summary judgment, Plaintiffs requested a Rule 56(d) extension to develop further facts related to causation through further discovery.  Plaintiffs also submitted supplemental exhibits after the Court heard oral argument on Chicago Title's motion for summary judgment, without first seeking leave of the Court.  Chicago Title moved to strike the supplemental exhibits.  Each of these issues is examined below.

### A. Plaintiffs' Negligence Action

At summary judgment, Plaintiffs reiterated that their only claim against Chicago Title is one of general negligence.  ECF No. 24, at 11-17.  In Washington,

a common law negligence claim has four elements: duty, breach, causation, and damages. *Michaels v. CH2M Hill, Inc.*, 171 Wn. 2d 587, 605 (2011). Chicago Title moves for summary judgment on Plaintiffs' negligence claim on the basis that (1) Chicago Title owed Plaintiffs no duty under the law and (2) Plaintiffs cannot establish causation under the facts of this case.

Whether a duty of care exists is a question of law to be decided by the court. *Osborn v. Mason Cnty.*, 157 Wn. 2d 18, 23 (2006). A "duty of care" is defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Affiliated FM Ins. Co. v. LTK Consulting Servs.*, 170 Wn. 2d 442, 449 (2010) (quoting *Transameria Title Ins. Co. v. Johnson*, 103 Wn. 2d 409, 413 (1985)). In examining a duty of care, Washington courts consider the duty's existence, measure, and scope. *Id.*; *accord Keller v. City of Spokane*, 146 Wn. 2d 237, 243 (2002). The Court must weigh "considerations of logic, common sense, justice, policy, and precedent." *See Affiliated FM*, 170 Wn. 2d at 449 (quoting *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn. 2d 233, 243 (2001)).

The existence of a duty of care is a "threshold question" in any negligence action. *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn. 2d 468, 474 (1998) (citing *Kelly v. Falin*, 127 Wn. 2d 31, 36 (1995)). If a duty is found to exist, then concepts of foreseeability "serve to define the scope of the duty owed." *Id.* at 475;

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~7

*Hansen v. Friend*, 118 Wn. 2d 476, 483-84 (1992); *Christen v. Lee*, 113 Wn. 2d 479, 492 (1989).

Plaintiffs' theory is that a title company has a legal duty sounding in tort to refrain from negligently recording liens that cause harm to a third party. Plaintiffs' assertion of a duty is not predicated on any theory of a special relationship between the parties, such as a fiduciary relationship between Plaintiffs and Chicago Title. Plaintiffs assert that the duty is merely one owed under a theory of general negligence. ECF No. 24, at 11-13.

Plaintiffs assert that the existence of a duty turns on the foreseeability of harm, but this argument was expressly rejected by the Washington Supreme Court in *Simonetta v. Viad Corp.*, 165 Wn. 2d 341 (2008). There, the court explained that foreseeability does not create a duty, but rather sets limits on the duty's scope once its existence is established. *Id.* at 349 n.4. *Keller v. City of Spokane*, 146 Wn. 2d 237, relied upon by Plaintiffs, is not to the contrary. *Keller* recognized that the foreseeability of harm is an "element" of the duty question, but this element goes to the scope of the duty and not its existence. *See id.* at 243. To determine whether a duty exists in the first instance, the Court must weigh "considerations of logic, common sense, justice, policy, and precedent." *Affiliated FM*, 170 Wn. 2d at 449.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~8

Plaintiffs have not cited to any Washington precedents supporting the existence of a duty under the circumstances of this case.  Plaintiffs refer the Court to *Walker v. Transamerica Title Ins. Co.*, 65 Wn. App. 399 (1992), and contend that the Washington Court of Appeals "assumed without deciding" that a title company owed a duty to avoid negligently recording a deed.  ECF No. 24, at 12.  However, in *Walker*, the parties assumed that the plaintiff could prove the existence of a duty and instead focused their arguments only on the element of proximate cause.  65 Wn. App. at 402.  The court had no occasion to decide or assume the existence of a duty, because that issue was not before the court.  Therefore, the *Walker* court did not hold that a title company owed a duty to avoid negligently recording a deed.

Moreover, *Walker* is distinguishable on its facts.  In *Walker*, the lien recorded by the title company was facially invalid.  *Id.* at 407-08 & n.9.  In this case, Plaintiffs have admitted that the duty they assert does not turn on whether the recorded documents were facially invalid.  ECF No. 33-1, at 8.  In addition, the title company in *Walker* insured the plaintiff, 65 Wn. App. at 401-02, whereas in this case Plaintiffs do not rely on any such contractual or legal relationship with Chicago Title, and instead contend that Chicago Title owed them a duty purely as a third party.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~9

Plaintiffs also rely on *Seeley v. Seymour*, where the California Court of Appeal held that a title insurance company could be held liable for negligently recording an invalid document. 190 Cal. App. 3d 844, 860-62 (1987). *Seeley* is not binding on courts applying Washington law. Moreover, *Seeley* is distinguishable because the title insurance company in that case had a contract with the county recorder whereby it was required to review any documents to ensure their validity prior to recording. *Id.* at 861 & n.7. Plaintiffs allege no such special obligation on the part of Chicago Title in this case. In addition, *Seeley* involved an instrument that was invalid on its face. *Id.* at 857, 861; *see also Luce v. State Title Agency, Inc.*, 950 P.2d 159, 161-62 (Ariz. Ct. App. 1997) (distinguishing *Seeley* and declining to find that title agency owed a duty of care to third party arising from recording of an instrument).

Chicago Title cites to *Barstad v. Stewart Title Guar. Co.*, 145 Wn. 2d 528, (2002), and *Klickman v. Title Guar. Co. of Lewis Cnty.*, 105 Wn. 2d 526 (1986), in arguing that Washington precedents argue against finding the duty proposed by Plaintiffs in this case. In *Barstad*, the Washington Supreme Court held that title insurance companies owe no general duty to disclose potential or known title defects in issuing preliminary title commitments to persons it will potentially insure. 145 Wn. 2d at 534-35. In *Klickman*, the court held that a third party who was not the buyer of property had no basis for imposing a duty on the insurance

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~10

1  company to include items in a preliminary commitment that affected only the third

2  party and not the buyer.  105 Wn. 2d at 529.

3       Plaintiffs contend that these cases are inapposite because they relate to the

4  issuing of preliminary commitments and not the recording of documents.

5  However, the duty Plaintiffs wish to impose here is even more attenuated than

6  those that the Washington Supreme Court declined to recognize in *Barstad* and

7  *Klickman*.  Plaintiffs argue for a duty that would be potentially applicable as

8  against the whole world, *see, e.g.*, *Strong v. Clark*, 56 Wn. 2d 230, 232 (1960) (a

9  properly recorded instrument serves as notice "to all the world"), not just

10  applicable to those persons party to, or possessing interests attendant to, a

11  preliminary title commitment.  The Court concludes that Washington precedents

12  do not support finding the duty of care proposed by Plaintiffs.

13       Turning to considerations of logic, common sense, and policy, Chicago Title

14  asserts that imposing the duty identified by Plaintiffs will result in much greater

15  potential liability for title companies that record deeds.  This would, in turn, result

16  in rising costs of the service to people seeking to have their instruments recorded.

17  Chicago Title argues that such a result would be inconsistent with the policies

18  embodied in Washington law.

19       The Court notes that Washington law favors the recording of documents by

20  granting superior status to recorded interests over unrecorded interests.  *See* RCW

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT~11

1    65.08.070 ("Every such conveyance not so recorded is void as against any

2    subsequent purchaser or mortgagee in good faith and for a valuable consideration

3    from the same vendor . . . of the same real property or any portion thereof whose

4    conveyance is first duly recorded.").  The purpose of recording acts is to ensure

5    stability and certainty in title to real property.  *See Ellingsen v. Franklin Cnty.*, 117

6    Wn. 2d 24, 28-29 (1991).  Placing substantial liability on title companies for

7    recording real property interests would undermine these goals.  Chicago Title

8    argues that if the holder of a real property interest faced substantial costs for the

9    service of having a title company record the instrument, then the interest holder

10   may not record the instrument at all or may attempt to record the instrument on his

11   own, without the special knowledge or expertise of how to properly effectuate a

12   recording.  This could lead to a rash of recording of faulty instruments, improperly

13   recording instruments in the wrong location, or not recording instruments

14   altogether.

15        Plaintiffs assert that the results of imposing liability on title companies

16   would not be as dire as Chicago Title claims.  Plaintiffs asert that the scope of the

17   duty would be limited to instances where the title company has actual knowledge

18   that the recorded instruments will harm a third party.  Plaintiffs contend that

19   Chicago Title had actual knowledge in this case because Chicago Title received

20   and reviewed copies of the Deed of Trust, the CPIII Operating Agreement, and the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT~12

GECC Loan Agreements related to Plaintiffs' 2006 purchase of the Battelle

Memorial property.  Chicago Title concedes for the purposes of summary

judgment that it could be charged with actual knowledge of these documents when

it later recorded the liens.  Thus, Plaintiffs argue, the duty would not impose

substantial liability on title companies because it would be limited to instances, like

this one, where the title company had documents in its possession indicating that

the document to be recorded would harm a third party's interests.

However, the scope of Plaintiffs' proposed duty would not necessarily be

limited to instances of actual knowledge.  Washington law recognizes that

constructive notice also will suffice to charge a party with knowledge of another

person's real property interest.  *E.g.*, *Miebach v. Colasurdo*, 102 Wn. 2d 170, 175-

76 (1984).  Plaintiffs have not put forth any basis for limiting a title company's

liability to instances where it has actual notice that recording the documents will

harm a third party's interests.  Under the duty of care proposed by Plaintiffs, a title

company could conceivably be liable for negligently recording a deed because the

record imparted constructive notice that another party's interests would be harmed

by the recording.

Moreover, even if liability could be limited to instances where actual notice

is present, as opposed to constructive notice, title companies still would be charged

with reviewing their files in every instance to ensure that they could not be charged

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT~13

with actual notice.  This would impose a substantial cost on the title company in

ensuring that it would not incur liability when recording the instrument.

Another policy issue for the Court to consider is that there already exists an

action sounding in tort and governing the parties' conduct in this case:  an action

for slander of title. To establish a slander of title action, a plaintiff must

demonstrate "(1) false words; (2) maliciously published; (3) with reference to some

pending sale or purchase of property; (4) which go to defeat plaintiff's title; and (5)

result in plaintiff's pecuniary loss." *Rorvig v. Douglas*, 123 Wn. 2d 854, 859-60

(1994) (citing *Save Corp. v. Eads*, 53 Wn. App. 443, 448 (1989)).  Malice may be

established "when the slanderous statement is not made in good faith or is not

prompted by a reasonable belief in its veracity."  *Id.* at 860 (citing *Brown v.

Safeway Stores, Inc.*, 94 Wn. 2d 359, 375 (1980)).  The malicious publication

element may be met through recording a document in the absence of good faith.

*See id.*

Historically, malice was required as an element of slander of title to avoid

chilling the assertion of valid property rights.  *See, e.g.*, *Ward v. Mid-West & Gulf

Co.*, 223 P. 170 (Okla. 1923).  The same policy considerations counsel against

finding the duty of care asserted by Plaintiffs in this case.  If mere negligence was

sufficient to establish a claim of the type asserted by Plaintiffs, the recording of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT~14

1    interests in property would be chilled through fear that providing good faith notice

2    of one's rights would subject the recorder to liability.

3         The Court additionally notes the existence of another claim that could

4    govern the parties' actions in this case:  tortious interference with a contractual

5    relationship or business expectancy.  Such a claim may be brought when there

6    exists "a valid contractual relationship of which the defendant had knowledge,"

7    "intentional interference with an improper motive or by improper means that

8    causes breach or termination of the contractual relationship," and "resultant

9    damage."  *Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship*, 158 Wn. App.

10   203, 225 (2010) (citing *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wn. 2d

11   133, 157 (1997)).  Interference with a contractual relationship or business

12   expectancy, like slander of title, is not available where the defendant acts in good

13   faith.  *Id.*  The existing tort remedies thus require the Plaintiffs to show the absence

14   of good faith.  The Court concludes that it should not create a new legal duty in

15   Washington law to assist Plaintiffs in avoiding this burden.

16        Nor do considerations of justice weight in favor of finding a duty of care

17   under these circumstances.  A title company recording an instrument gives notice

18   to the rest of the world as to the instrument's existence.  That title company does

19   not cause the instrument itself to exist.  In this case, for example, Chicago Title

20   merely recorded an instrument that served as an event of default for Plaintiffs'

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT~15

1    loan.  Chicago Title had no role in actually creating the instrument.  The

2    instrument would have existed as an event of default regardless of Chicago Title's

3    actions.  At best, Plaintiffs' argument is that if Chicago Title had not recorded the

4    instrument, and if no other party had recorded the instrument instead, then

5    notification of the instrument's existence could have been delayed long enough for

6    Plaintiffs to have secured other financing for the Battelle Memorial property.  The

7    Court finds that there should not be a duty created for title companies to hide or

8    delay the discovery of instruments that could potentially cause harm to a third

9    party as a result of their existence.

10        Therefore, after considering logic, common sense, justice, policy, and

11   precedent, the Court concludes that a title company owes no tort duty under

12   Washington law to refrain from recording instruments that may cause harm to a

13   third party's interests.

14        Having determined that Chicago Title did not owe Plaintiffs a duty of care

15   under the circumstances, the Court need not address Chicago Title's argument that

16   Plaintiffs cannot establish causation.  *See, e.g.*, *Schooley*, 134 Wn. 2d at 474

17   (whether the defendant owes a duty of care to the injured plaintiff is a "threshold

18   question" in a negligence action"). [1]

19   _____

     [1]  The parties also disagree on when the statute of limitations began to run in this case.

20   Plaintiffs filed their complaint on April 14, 2011.  Negligence actions are subject to a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT~16

**B.  Rule 56(d) extension & Chicago Title's motion to strike**

Federal Rule of Civil Procedure 56(d) provides that when the nonmovant submits an affidavit or declaration showing specific reasons why the nonmovant cannot present facts necessary to oppose summary judgment, the court may defer considering the motion, allow time to obtain affidavits or take discovery, or enter any other appropriate order.

In their memorandum in opposition to Chicago Title's motion for summary judgment, Plaintiffs requested a Rule 56(d) extension for the purposes of conducting additional discovery and submitted an affidavit in support of their request, ECF No. 27.  Plaintiffs also submitted additional exhibits after the Court

---

three-year statute of limitations under Washington law.  RCW 4.16.080(2).  Plaintiffs allege that the statute of limitations began to run when GECC notified the Plaintiffs in 2009 that Events of Default had occurred.  Chicago Title contends that the statute of limitations began to run when the encumbrances were recorded.  However, even if the date of recording was the date on which the statute of limitations began to run, Chicago Title recorded two of the four relevant encumbrances within three years of the date that Plaintiffs filed their complaint.  Because Plaintiffs' theory is that a duty arose through the recording of any one of the encumbrances, the statute of limitations is not implicated in considering whether Chicago Title owed Plaintiffs a duty.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~17

heard oral argument on Chicago Title's motion, without seeking leave of the Court. ECF No. 41.  Chicago Title moved to strike the exhibits.  ECF No. 43.

Plaintiffs' additional exhibits touch on issues of causation, specifically whether Plaintiffs would have been able to obtain refinancing from CTL Capital were it not for Chicago Title's action of recording the disputed instruments.  These additional exhibits relate to causation rather than whether Chicago Title owed Plaintiffs a duty of care, which is the threshold issue before the Court.  The existence of a duty of care is a question of law.  *Osborn*, 157 Wn. 2d at 23. Therefore, Plaintiffs' request for a Rule 56(d) extension is denied as moot and Chicago Title's motion to strike Plaintiffs' supplemental exhibits is denied as moot.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Chicago Title's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

The District Court Clerk is hereby directed to enter this Order, to provide copies to counsel, enter judgment for Defendant Chicago Title, and close this case.

**DATED** this 3rd day of July 2013.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~18